[File No. Cr. 220]

STATE OF NORTH DAKOTA, Respondent, v.
E. C. RUBLE, Appellant.

(40 NW2d 794)

Opinion filed January 10, 1950

*F. E. McCurdy,* for appellant.

*Wallace E. Warner,* Attorney General, *George S. Register,* State's Attorney, and *J. A. Hyland,* Assistant State's Attorney, for respondent.

CHRISTIANSON, J.   An information was duly filed in the district court of Burleigh County wherein it was charged that on or about August 21, 1946, in the County of Burleigh, in the State of North Dakota, the above named defendant, E. C. Ruble, did commit the crime of operating a motor vehicle upon a public highway in said Burleigh County while his license to operate a motor vehicle was suspended.   To this information the defendant entered a plea of not guilty.   The case was tried to a jury which returned a verdict finding the defendant guilty of operating a motor vehicle upon a public highway in Burleigh County, North Dakota, while his operator's license was suspended, as

charged in the information. The court rendered judgment and sentenced the defendant to imprisonment in the county jail of Burleigh County for a period of sixty days and that he pay a fine of $150 and costs of prosecution taxed at $54.80 and that in default of said fine and costs he be "imprisoned in the said county jail for the further period, at the rate of one day for every $2.00 fine and costs or until said fine and costs be paid." Thereafter the defendant moved for a new trial upon the grounds, among others, that the court erred in admitting certain evidence offered by the State and also that the sentence imposed upon the defendant was in excess of that which the court was authorized to impose. The motion for a new trial was denied and the defendant has appealed from the judgment and from the order denying a new trial.

The laws of this state in force during the year 1946, and in force when this action was tried and when judgment of conviction was rendered and sentence pronounced, read as follows:

"*Motor Vehicle Operator's License Required; Exception.* No person, except as is otherwise provided in section 39–0603, shall operate or drive a motor vehicle upon any highway of this state without first obtaining a motor vehicle operator's license as is provided in this chapter." NDRC 1943, Sec 39–0601.

"*Persons Exempt From Operator's License.* An operator's license shall not be required of a person:

1. Driving or operating a road roller, road machinery, or any farm tractor or implement temporarily drawn or moved upon the highways;

2. In the service of the army, navy, or marine corps of the United States, when such person is furnished a driver's permit and is operating an official motor vehicle in such service." NDRC 1943, Sec 39–0603.

"*Revocation or Suspension of Drivers' Licenses.* In case of:

1. Conviction of manslaughter or homicide in any degree arising out of the operation of a motor vehicle;

2. Conviction of driving a motor vehicle while under the influence of intoxicating liquor or narcotic drugs;

3. Conviction of any crime punishable as a felony under the

motor vehicle laws of this state, or any other felony in the commission of which a motor vehicle was used;

4. Conviction or forfeiture of bail upon two charges of reckless driving within the preceding twelve months;

5. Conviction of a driver of a motor vehicle involved in an accident resulting in the death or injury of another person upon a charge of failing to stop and disclose his identity at the scene of the accident;

6. Conviction of three misdemeanors for violation of the provisions of this chapter or of any law of this state relating to highways during the two year period covered by any single license,

the judge of the court in which the person has been convicted or has forfeited bail shall order the revocation, or, in his discretion, the suspension, of license of said person for not less than thirty days nor more than two years, and thereupon shall cause a certified copy of such order to be sent to the state highway commissioner. The commissioner immediately shall revoke or suspend the license as directed by such order and shall give notice thereof to such person by mail, and shall require such person forthwith to surrender and return his certificate of license to the commissioner." NDRC 1943, Sec 39–0610.

*"Misdemeanor to Operate Motor Vehicle on Highway When Operator's License Suspended or Revoked.* Any person who drives a motor vehicle upon the highways of this state while his license to operate a motor vehicle is suspended or revoked is guilty of a misdemeanor." NDRC 1943, Sec 39–0620.

*"Penalty for Violation of Chapter.* Any person who violates any of the provisions of this chapter is guilty of a misdemeanor and for the first offense shall be punished by a fine of not more than one hundred dollars, or by imprisonment for not more than thirty days. For a second or subsequent offense committed within one year after the first offense, such person shall be punished by a fine of not more than two hundred dollars, or by imprisonment for not more than ninety days, or by both such fine and imprisonment." NDRC 1943, Sec 39–0624.

In this case the defendant was charged with driving a motor

vehicle upon the highways of this state while his license to operate a motor vehicle was suspended. Sec 39–0620. It was therefore incumbent upon the State to prove that the defendant's license had been revoked or suspended. Under the statute such license could be revoked or suspended only if judgment of conviction had been rendered against the defendant for one or more of the offenses specified therein, and the trial court had ordered the license to be revoked or suspended. Sec 39–0610. When a judgment of conviction is rendered for any of the offenses specified in Sec 39–0610, supra, the trial court is required to "order the revocation, or, in his discretion, the suspension, of license of said person for not less than thirty days nor more than two years," and to "cause a certified copy of such order to be sent to the state highway commissioner," and thereupon the state highway commissioner is required to revoke or suspend the license in accordance with the directions of the order of the court and to notify the person to whom the license had been issued that such license has been revoked or suspended as the case may be and to require such person forthwith to surrender and return the license to the state highway commissioner. Sec 39–0610, supra.

The first assignment of error is predicated upon the admission in evidence of duly authenticated records of the district court of Burleigh County showing that the defendant, E. C. Ruble, was convicted in the district court of Burleigh County of the crime of driving a motor vehicle while under the influence of intoxicating liquor and that on December 19, 1945, he was duly sentenced, and judgment of conviction was duly rendered for such crime and an order entered as part of such judgment of conviction that a motor vehicle driver's license then held by him be suspended for a period of two years from that date. When these documents were offered in evidence defendant's counsel stated that the defendant in person would admit that the motor vehicle driver's license issued to him had been revoked or suspended and that such revocation or suspension was in effect at the time the information charged he had operated an automobile on the public highways in Burleigh County while his motor vehicle driver's license was suspended. Defendant's counsel ob-

jected to the admission in evidence of the judgment of the district court showing the conviction of the defendant of driving a motor vehicle while under the influence of intoxicating liquor containing an order of the district court that the motor vehicle driver's license held by the defendant be suspended for a period of two years from and after December 19, 1945. Defendant's counsel also objected to admission in evidence of the order of the state highway commissioner suspending such driver's license in accordance with the provisions of the order of the district court. The trial court overruled the objections and admitted the documents in evidence. It is contended by defendant's counsel that such evidence should have been excluded; that the offer of defendant's counsel that defendant in person would admit as a fact that a motor vehicle operator's license issued to the defendant had been revoked or suspended dispensed with the necessity of further evidence of such fact and that there was no necessity for the admission of the documents offered by the state's attorney.

It is argued by defendant's counsel that the admission in evidence of these documents was harmful to the defendant and constituted prejudicial error. As has been pointed out a motor vehicle operator's license cannot be revoked or suspended unless the holder of the license has been convicted of one of the offenses specified in the statute as a ground for such revocation or suspension. The district court would have been without authority to have ordered that the driver's license held by the defendant be suspended unless and until judgment of conviction had been rendered against the defendant for one of the offenses specified in section 39–0610, supra, and the state highway commissioner would have been without authority to suspend the license and to require the defendant to surrender and return his driver's license unless and until an order for such suspension had been made by the district court and a certified copy thereof transmitted to the state highway commissioner. Obviously the documents offered by the state's attorney and received in evidence were the best evidence that could be adduced to establish the fact that the driver's license had been suspended. 7 Ency of Evidence, 758; Underhill's Criminal Evidence, 4th Ed, Sec 828,

p 1497. There was no error in the admission of these documents in evidence. Burnham v. State, 127 Neb 370, 255 NW 48; Wiese v. State, 138 Neb 685, 294 NW 482.

The defendant next assigns error on certain rulings in the admission of testimony offered by the State to show that the defendant drove a motor vehicle upon a public highway in Burleigh County on August 21, 1946, while his license to operate a motor vehicle was suspended. To prove this the State called one Jordan as a witness. Jordan testified that he is a rural mail carrier residing at the village of Driscoll in Burleigh County; that he has lived at Driscoll since 1913 and has worked as a rural mail carrier since April 15, 1918. He testified that he was well acquainted with the defendant Ruble and had known him for many years. He further testified that on August 21, 1946, between 11:30 A. M. and 12 Noon of that day he saw the defendant Ruble driving an automobile on the main street of the village of Driscoll; that such main street runs north and south and crosses the railroad track within the village; that the defendant Ruble came driving from the north and crossed the railroad track and continued south on main street. The State further called as witnesses one Titus who resides in the village of Driscoll and one Giest who resides on a farm close to the village. Giest testified that in the forenoon of August 21, 1946, he and Titus were in the village of Dawson which is located some sixteen or seventeen miles east of Driscoll on U. S. Highway No. 10. He testified that he was driving a truck owned by Titus and that Titus was riding in the truck. Both Giest and Titus testified that they were well acquainted with the defendant Ruble and had known him for many years. They both testified that as they were driving on the principal street of the village of Dawson about 11 o'clock in the forenoon of that day they saw the defendant Ruble standing beside his automobile which was then parked in front of one of the business places on the street. They both testified that they left Dawson and entered U. S. Highway No. 10 in the outskirts of the village and drove on that highway in a westerly direction toward Driscoll; that after they had driven about five miles the defendant Ruble, driving the car beside which they had seen the defendant standing in Dawson

shortly before, passed the truck in which Giest and Titus were riding. The witness Giest testified that he resides on a farm about two and one-half miles south of Driscoll; that before going to Dawson he had left his automobile parked in front of a grocery store in Driscoll and that on returning to Driscoll from Dawson about noon on August 21, 1946, he got into his own automobile and drove the same to his home south of Driscoll; that in driving to his home he passed the residence of the defendant Ruble which is on a farm adjoining the village of Driscoll and that there he saw the same car which the defendant Ruble was driving when he passed the truck in which Titus and Giest were riding on U. S. Highway No. 10 between Dawson and Driscoll. Both Giest and Titus testified that the defendant Ruble was alone in the car and that he was driving it.

The village of Driscoll and the village of Dawson are both adjacent to U. S. Highway No. 10 which traverses the counties of Burleigh and Kidder from east to west. The village of Dawson is located in Kidder County about 19½ miles east of Driscoll and about 16 miles east of the boundary line between Kidder and Burleigh counties. The village of Driscoll is located in Burleigh County about 3½ miles west of the boundary line between Kidder and Burleigh counties.

Both Giest and Titus testified that the car driven by the defendant Ruble passed the truck in which they were riding at a point on U. S. Highway No. 10 in Kidder County some five miles east of the boundary line between Burleigh County and Kidder County. Defendant's counsel contends that this testimony was inadmissible for the reason that it tended to show the commission by the defendant of the crime of operating a motor vehicle on a highway in Kidder County while his operator's license was suspended; and that such evidence was not admissible in this case wherein he was being prosecuted for having committed such offense in Burleigh County. The contention is without merit. Evidence which is relevant and competent and tends to prove a fact material to the issues is not rendered inadmissible because it tends to show that the defendant has committed another crime than the one for which he is being prosecuted. 1 Wharton's Criminal Evidence, 11th Ed, Sec 345, pp 489–490; Underhill's

Criminal Evidence, 4th Ed (Niblack), Sec 184, p 333; 1 Wigmore on Evidence, 3rd Ed, Sec 216, pp 712 et seq; State v. Gummer, 51 ND 445, 200 NW 20; State v. Kansas, 20 Kan 319; Com. v. Robinson, 146 Mass 571, 16 NE 452.

Obviously, the testimony of Giest and Titus showing that the defendant drove his car in Kidder County on the highway leading to and a short distance from the village of Driscoll and that shortly thereafter Giest saw the same car parked in front of the defendant's residence immediately outside the village of Driscoll was not offered or admitted for the purpose of showing a habit or predisposition of the defendant to commit crime and that hence it was likely that he had committed the offense charged against him in the information in this action. The testimony did not relate to a disconnected act; it related to a continuous transaction. Walker's Case, 1 Leigh 576; 1 Wigmore on Evidence, 3rd Ed, Sec 216, p 715. The evidence relating to the defendant driving his car on the road toward the village of Driscoll and that shortly thereafter the car which he was so driving was parked in front of his residence adjacent to the village of Driscoll had a direct tendency to corroborate the testimony of the witness Jordan who testified that he saw the defendant driving the car in the village of Driscoll and to show that the defendant on August 21, 1946, did drive his car in Burleigh County. No error was committed in the admission of this testimony.

The next and last assignment of error is predicated upon the sentence and judgment of conviction. As said the court rendered judgment and sentenced the defendant to imprisonment in the county jail of Burleigh County for a period of sixty days and that he pay a fine of $150 and costs of prosecution taxed at $54.80 and that in default of said fine and costs he be "imprisoned in the said county jail for the further period, at the rate of one day for every two dollars of fine and costs or until said fine and costs be paid."

The offense of which the defendant was convicted was created, and the punishment therefor was prescribed, by NDRC 1943, Chapter 39. NDRC 1943, Sec 39–0620 provides that any person who drives a motor vehicle upon the highways of this state while

his license to operate a motor vehicle is suspended or revoked is guilty of a misdemeanor, and NDRC 1943, Sec 39–0624 provides that: "Any person who violates any of the provisions of this chapter is guilty of a misdemeanor and for the first offense shall be punished by a fine of not more than one hundred dollars, or by imprisonment for not more than thirty days. For a second or subsequent offense committed within one year after the first offense, such person shall be punished by a fine of not more than two hundred dollars, or by imprisonment for not more than ninety days, or by both such fine and imprisonment." The record of the proceedings had at the time sentence was passed and judgment of conviction rendered discloses that both parties and the court acted upon the theory that said section 39–0624 fixed the punishment that might be imposed upon the defendant and we think this was correct. The record of the proceedings further shows that the court imposed sentence and rendered judgment on the theory that the defendant was being sentenced for a second or subsequent offense. Defendant's counsel contended that there was no valid basis for imposing a sentence upon the defendant for a second or subsequent offense. He called attention to the fact that there was no allegation in the information setting forth any facts warranting such sentence and that no proof had been offered by the State as part of its case of a former conviction of the defendant for violation of any of the provisions of NDRC 1943, Chapter 39. The objections interposed by defendant's counsel were overruled and sentence was imposed and judgment of conviction rendered as above stated. The judgment of conviction contains no recital or finding of a former conviction or that the sentence and judgment was one for a second or subsequent offense. Defendant's counsel contends that under the proceedings had in the court below the defendant was subject to punishment only for a first offense and that the court was in error in imposing sentence upon the defendant as for a second or subsequent offense. We have reached the conclusion that this contention is well founded and must be sustained. The criminal information in this case charged that "on or about the 21st day of August, in the year of our Lord one thousand nine hundred and forty-six, in the County of Bur-

leigh in the State of North Dakota, one E. C. Ruble, late of the County of Burleigh and State aforesaid, did commit the crime of operating a motor vehicle on a highway, while his operator's license was suspended." There was no reference whatever in the information to a former conviction and there was nothing even to intimate that the defendant was being prosecuted for a second or subsequent offense, and obviously no evidence would have been admissible in the presentation of the State's case to show a former conviction or convictions of the defendant for the violation of any of the provisions of said Chapter 39, and no such evidence was offered or attempted to be offered. However, when defendant became a witness in his own behalf he was asked on cross examination whether he had been convicted of certain offenses. Some of the offenses to which reference was made in the questions propounded related to violations of laws other than said Chapter 39, NDRC 1943. Some of the convictions concerning which inquiry was made were stated in the questions to have been had in 1941 and in 1943. The cross examination related to no matter that had been alluded to in the examination in chief and was obviously conducted for the purpose of affecting the credibility of the defendant under the rule established in this jurisdiction in Territory v. O'Hare, 1 ND 30, 44 NW 1003, and reaffirmed and reannounced in State v. Kent, 5 ND 516, 67 NW 1052, 35 LRA 518.

In the court below and also in this court it is argued by the State that the provision of the statute authorizing a more severe penalty for a second or subsequent offense did not create an offense and that the former conviction was not a part or ingredient of the offense charged but was a matter which pertained only to the punishment that might be inflicted and that hence there was no necessity for alleging the former conviction; that a former conviction was merely a circumstance for consideration by the trial judge in passing sentence. It is true the provision authorizing a more severe penalty for a second or subsequent offense is no part of the crime and pertains only to the punishment which the court may impose, State v. O'Neal, 19 ND 426, 124 NW 68; State v. Bloomdale, 21 ND 77, 128 NW 682; State v. Webb, 36 ND 235, 162 NW 358; but the former

conviction is a material fact which must be established and which the record must show to exist to authorize the trial court to impose the additional punishment which the law provides may be imposed on one who is convicted of a second or subsequent offense. And it is a general rule recognized in most jurisdictions that where a prior conviction is relied on to enhance the punishment for the offense charged the fact of such conviction must be alleged in the indictment or information, in the absence of statutory provisions regulating the procedure dispensing with such allegation. 42 CJS, Indictments and Informations, Sec 145, p 1057; State v. Findling, 123 Minn 413, 144 NW 142, 49 LRA NS 449; State v. Bloomdale, supra; Osborne v. State, 115 Neb 65, 211 NW 179; Weise v. State, 138 Neb 685, 294 NW 482; Cavassa v. Off, 206 Cal 307, 274 Pac 523; Ex Parte Harris, 80 CA2d 173, 181 Pac2d 433; Paetz v. State, 129 Wis 174, 107 NW 1090; 9 A & E Ann Cas 767 et seq; I Bishop on Criminal Law, 9th Ed, Sec 961, p 710; I Bishop New Criminal Procedure, 2d Ed, Sections 77–85, p 58 et seq; Black on Intoxicating Liquors, Sec 491, p 580; 2 Woollen and Thornton on Intoxicating Liquors, Sec 911, p 1571 et seq; Joyce on Indictments, 2d Ed, p 516 et seq. Note: 9 A & E Ann Cas p 768 et seq; Anno 58 ALR 64; Anno 82 ALR 366; Anno 116 ALR 229; Anno 132 ALR 107; Anno 139 ALR 689.

In Corpus Juris Secundum (42 CJS, Indictments and Informations, Sec 145, pp 1056, 1057) it is said:

"Ordinarily, the indictment or information should allege such circumstances as may influence the punishment for the offense charged, and where the matter in aggravation is relied on, the pleading should first charge the offense itself and then set out the matter in aggravation."

"The general rule requires an indictment or information to allege convictions of prior offenses, where such prior convictions would enhance the punishment or would affect the grade or degree of the offense charged."

In State v. Bloomdale, supra, this court said:

"In Reg. v. Clark, Dears. CC 198, it was said: 'A statement of a previous conviction does not charge an offense. It is only the averment of a fact which may affect the punishment. The

jury do not find the person guilty of the previous offense; they only find that he was previously convicted of it, as an historical fact.'

"In Woollen & Thornton on Intoxicating Liquors, vol 2, Sec 911, this principle is laid down as follows: 'In all such instances such averments must be inserted in the indictment if a greater punishment is desired, as will reasonably point out to the accused where he can find the record of the first conviction.'"

Dr. Bishop an eminent authority on criminal law said: "The allegation,—in the indictment for an offence treated as the first need not charge it to be such; for this is presumed. But under the ordinary forms of the statutory provision, if the offence is the second or third, and by reason thereof the punishment is to be made heavier, this fact must appear in the indictment; because by the rules of criminal pleading, every particular which makes heavier the punishment to be inflicted must be set out." I Bishop on Criminal Law, 9th Ed, Sec 961, pp 710–711. See, also, I Bishop's New Criminal Procedure, 2d Ed, Secs 77–84, pp 59–62. In State v. Findling, supra, the court summarized its holding in paragraph 2 of the syllabus as follows: "In the absence of some statute regulating the procedure, to authorize the court to impose the increased punishment, the fact of the prior conviction must be set forth in the indictment, established by proper evidence, and passed upon by the jury."

The rule announced by the Supreme Court of Minnesota in paragraph 2 of the syllabus in State v. Findling, quoted above, is in accord with the great weight of authority. In some jurisdictions provision has been made by law to permit the matter of the former conviction "to be withheld from the jury, or even omitted from the indictment, until the prisoner has been convicted of the offence itself and then brought forward in some proper manner in aggravation of the punishment." I Bishop on Criminal Law, 9th Ed, Sec 961, p 711; Underhill's Criminal Evidence, 4th Ed (Niblack), Sec 826, p 1497.

In State v. Findling, supra, the court said: "By the great weight of opinion it is held that the evidence, and a verdict of the jury finding the prior conviction, are essential to the power of the court to impose the increased punishment. At least such

is the rule in nearly all the states where no statutory method of determining the prior conviction is prescribed. . . . We follow and apply the general rule, though it may be remarked, in passing, that entire fairness in prosecutions of this character would suggest some statutory change in the law, dispensing with the necessity of pleading the fact of prior conviction, and providing for the determination thereof by the court after conviction of the charge on trial. This would avoid any possible prejudice to defendant."

In this state no provision has been made by statute for a procedure dispensing with the allegation and proof of the prior conviction. Our law, however, did provide that in prosecutions for violation of the prohibitory liquor law "it shall not be requisite to set forth in the information or affidavit or indictment the record of the former conviction, but it shall be sufficient briefly to allege such conviction." CL 1913, Sec 10128; State v. Markuson, 5 ND 155, 73 NW 82. It will be noted that this did not dispense with the necessity of alleging the former conviction but recognized that the indictment or information must allege such conviction and merely dispensed with the necessity of setting the same forth in the detail which otherwise would have been necessary.

The State cites the decision of this court in Ryan v. Nygaard, 70 ND 687, 297 NW 694, in support of the contention that it was not necessary to allege the former conviction in the information. The decision in Ryan v. Nygaard lends no support to such contention. Ryan v. Nygaard involved proceedings had and sentence and judgment pronounced under the so-called "habitual criminal statute," Laws 1927, Chapter 126. That statute provided:

"Section 1. That if a person commits a felony, within this State, after having been convicted of two felonies, either in this State or any other State of the United States, the maximum punishment or penalty of imprisonment for such offense shall be twice the maximum sentence now or hereafter prescribed by law for a first conviction of said offense.

"Section 2. That if a person commits a felony, within this State, after having been convicted three or more times of felon-

ies, either in this State or any other State of the United States, the maximum punishment or penalty of imprisonment for such offense shall be life imprisonment.

"Section 3. If at any time before judgment and sentence, or at any time after judgment and sentence but before such judgment and sentence is fully executed, it shall appear that one convicted of a felony, has been previously convicted of crimes as set forth in sections one, or two of this Act, it shall be the duty of the State's Attorney of the county in which such conviction was had to file an information with the court wherein such conviction was had accusing such person of such previous convictions, whereupon the Court shall cause the said person, whether confined in prison or otherwise, to be brought before it, either in term or in vacation, and shall inform him of the accusations contained in said information by reading the same to him, and of his right to be tried as to the truth thereof according to law, and shall require such person to say whether he has been convicted as charged in said information or not. If he shall say that he has not been convicted as therein charged or refuses to answer, or remains silent, his plea, or the fact of his silence shall be entered of record, and the court shall make an order directing that the truth of the accusations made in said information be submitted to a jury at the then present term of court, if in term time and a jury be in attendance, unless continued for cause, or at the next ensuing term of court when a jury is in attendance. If the jury shall find and determine by evidence beyond a reasonable doubt that the accused has been guilty of one or more convictions as charged in said information, or if the accused acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment or penalty of imprisonment as in sections one or two provided, and shall vacate any previous judgment and sentence if one has heretofore been entered or imposed."

The differences between the proceedings prescribed by the habitual criminal act and which were had incident to the pronouncement of the sentences and judgments involved in Ryan v. Nygaard and the proceedings that were had and the action

taken in this case are obvious. In that case an information was duly filed against the defendant containing definite recitals of the former convictions as required by the habitual criminal act. The defendant was brought into court and informed of the accusations contained in the information and of his right to be tried as to the truth thereof according to law. He was asked to say whether he had been convicted as charged in the information and if he stated that he had not been convicted as therein charged or refused to answer or remained silent his plea or the fact of his silence was entered of record and the truth of the accusations made in the information was submitted to a jury, and he could be sentenced for a second or subsequent offense only if the jury should find and determine by the evidence beyond a reasonable doubt that the accused was guilty of one or more convictions as charged in the information; or if the accused acknowledged or confessed in open court, after being duly cautioned as to his rights, that he has been so convicted. Laws 1927, Chapter 126, Sec 3.

In this case there was no charge in the information that the defendant was being prosecuted for a second offense or that he formerly had been convicted of any offense. There was no reference whatsoever in the information to a prior conviction. Obviously no proof could be adduced under the information to establish that there had been a former conviction and no proof to that effect was offered by the prosecution in the presentation of its case against the defendant. The only reference made upon the trial to prior convictions was made in questions propounded by the state's attorney on cross examination of the defendant for the obvious purpose of impeaching his testimony.

In Ex Parte Harris, 80 CA2d 173, 181 Pac2d 433, the court had occasion to consider questions relating to the allegation and proof of a prior conviction, where such prior conviction is relied upon to enhance the punishment to be inflicted, or affects the duration of imprisonment. California had enacted a statute authorizing a board, after the expiration of six months from the commencement of imprisonment, to fix and determine the period of imprisonment. The statute provided that in certain cases

where the prisoner previously had been convicted of a felony certain minimum penalties should apply only when such previous conviction of a felony had "been charged and admitted or found to be true in the manner provided by law." The question arose whether a certain prisoner should be considered as a "first-termer" or a "second-termer" and whether he was subject to the minimum term of imprisonment prescribed in the act for one who had previously been convicted of a felony. In its opinion in the case the court said: "The general rule is that, unless controlled by statute, in order to subject an accused to enhanced punishment for a second or subsequent offense, it is necessary to allege in the written accusation the fact of prior conviction, . . . 'It is well established in this state, where a prior conviction is relied upon for the purpose of empowering a court to inflict an increased penalty upon a defendant, that the indictment or complaint must allege the prior conviction, and upon the trial, unless admitted, such prior conviction must be proven by competent evidence.'

"It hardly could be contended that an admission of prior convictions by the petitioner under cross-examination for purposes of impeaching his testimony constitutes 'found to be true in the manner provided by law.' "

We are all agreed that under the facts established by the record in this case the defendant was subject to punishment only as upon conviction for a first offense and that the sentence and judgment pronounced upon him as for the conviction of a second offense were unauthorized. It follows, therefore, that the case must be remanded with directions that the trial court set aside the judgment appealed from and pronounce sentence and render judgment conformable to the law as upon the conviction of the defendant of the crime charged in the information as a first offense. State v. Merry, 62 ND 339, 243 NW 788; State v. Colohan, 69 ND 316, 286 NW 888. It is so ordered.

NUESSLE, C. J., MORRIS, BURKE and GRIMSON, JJ., concur.